(No. 28705.—

THE COUNTY OF CHRISTIAN, Plaintiff in Error, *vs.* THE
INDUSTRIAL COMMISSION *et al.*—(CLARA SEAMAN MIL-
LER, Defendant in Error.)

*Opinion filed September 19, 1945—Rehearing denied Nov. 20, 1945.*

WILSON, GUNN, and SMITH, JJ., dissenting.

THOMAS SWEENEY, State's Attorney, (HERSHEY & BLISS, of counsel,) both of Taylorville, for plaintiff in error.

PROVINE, WILLIAMS & PINKERTON, of Taylorville, and ANGERSTEIN & ANGERSTEIN, of Chicago, for defendant in error.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

This court has allowed a writ of error to review a judgment of the circuit court of Christian county, awarding compensation-to defendant in error, Clara Seaman Miller. The arbitrator found that Mrs. Miller, on October 12, 1942, while in the employ of the county of Christian, sustained accidental injuries arising out of and in the course of her employment, and that she and her employer were, at the time, operating under the provisions of the Workmen's Compensation Act; and further found that the injuries sustained caused the aggravation of a pre-existing arthritic condition, which resulted in her complete and permanent disability. In accordance with such finding, she was awarded, for total disability, the sum of $15.87 per week for a period of 277 weeks and $4.01 for one week, and a pension for life of $29.33 per month, payment of which was to begin when the total-disability award had been paid. The Industrial Commission sustained the award of the arbitrator, and the circuit court confirmed the decision of the commission.

It was stipulated that defendant in error is a registered and certified public health nurse, who, on October 12, 1942, was; and for many years prior thereto had been, employed as county tuberculosis nurse by the board of directors of the tuberculosis sanitarium fund of the county of Christian; that an automobile was purchased and maintained by the tuberculosis sanitarium board and placed at her disposal for the purpose of making the necessary trips incident to

her employment; and that on October 12, 1942, while she was operating said automobile on State highway Route 127, at the intersection of State highway Route 16 in Montgomery county, the car collided with another motor vehicle, in which collision she received the injuries in question.

Plaintiff in error denies Mrs. Miller's right to compensation on the ground, among others, that she and the county of Christian were not operating under and bound by the provisions of the Workmen's Compensation Act at the time and place of the occurrence of the accidental injuries in question. In the view we have taken of the case it will not be necessary to consider any other contention.

Plaintiff in error did not elect to come within the provisions of the Workmen's Compensation Act. Liability on its part, if any, under the act must arise by reason of the automatic application of the statutory provisions to plaintiff in error without election. Section 3 enumerates various classes of enterprises or businesses as extra-hazardous and provides that the provisions of the act shall apply automatically and without election to the State, county, city, town, township, incorporated village or school district, body politic or municipal corporation, and to all employers and all their employees, engaged in any such enumerated enterprises or businesses, which are declared by the act to be extra-hazardous. Defendant in error relies upon the provisions of subparagraph 8 of this section to bring the parties within the act. The section, so far as material to the consideration of this case, is as follows: "The provisions of this act hereinafter following shall apply automatically and without election to the State, county, city, town, township, incorporated village or school district, body politic or municipal corporation, and to all employers and all their employees, engaged in any department of the following enterprises or businesses which are declared to be extra-hazardous, namely: * * * 8. In any enterprise in which statutory or municipal ordinance regulations are now or

shall hereafter be imposed for the regulating, guarding, use or the placing of machinery or appliances or for the protection and safeguarding of the employees or the public therein; each of which occupations, enterprises or businesses are hereby declared to be extra-hazardous." Ill. Rev. Stat. 1943, chap. 48, par. 139.

Defendant in error was, on February 1, 1925, employed by the board of directors of the tuberculosis sanitarium fund of Christian county in the capacity of county tuberculosis nurse of the county, and she thereafter remained continuously in such employment and was at the time of the accident on October 12, 1942, the tuberculosis nurse of Christian county. Her employment and duties as such nurse were by virtue of and under the provisions of the statute commonly known as the County Tuberculosis Sanitarium Act (Ill. Rev. Stat. 1943, chap. 34, par. 164 *et seq.*) and being, as indicated by its title, an act relating to the care and treatment by counties of persons afflicted with tuberculosis and providing the means thereof. Christian county maintains no public tuberculosis sanitarium, but, pursuant to the authority of section 7 of the act, provides sanitarium care to its tubercular inhabitants in sanitariums located in Sangamon and Macon counties. Defendant in error's duties as county tuberculosis nurse included interviewing suspected patients, directing them to the clinics and giving them instructions, following up newly-discovered cases at the clinic, making calls on patients at the sanitariums and in their homes and on suspected cases at their homes, interviewing doctors and hospital authorities, and investigating "border line" cases to ascertain whether her own or an adjoining county was responsible for their hospitalization. Her duties required considerable travel and for that purpose she was furnished a car, on each door of which were the words "Christian County Sanitarium Board" and a double-barred red cross indicative of tuberculosis work. She made a report each month to the sani-

tarium board, and prepared an annual or semi-annual report, as required by the sanitarium board for use in making its report to the board of supervisors of the county. She was furnished an office in the county court house where she wrote letters and often interviewed patients. Her office contained a desk, typewriter and file cases, and was principally a place to keep records and a typewriter, most of her work being field work.

Defendant in error contends that the Christian county court house, wherein she maintains her office as the administrative headquarters of her employer's enterprise or business of providing care and treatment to the tubercular inhabitants of the county, is subject to statutory and municipal ordinance regulations which automatically bring said enterprise, as extra-hazardous, within the provisions of the Workmen's Compensation Act. The theory upon which she predicates her case is that one department of her employer's business of providing treatment for tubercular persons, namely the office or administrative department, is extra-hazardous because conducted within the court house which is a building subject to statutory and municipal ordinance regulations; that if one department of an enterprise or business is extra-hazardous, then all its departments are extra-hazardous and all its employees are entitled to the protection of the act, regardless of whether they are employed in the extra-hazardous department or within the extra-hazardous building at the time the injuries are received; and that therefore defendant in error is entitled to compensation in this case regardless of the fact that her injuries were not received within the extra-hazardous building.

This court has held that the statutory and municipal ordinance regulations, referred to in subparagraph 8 of section 3 of the Workmen's Compensation Act as bringing within the provisions of the act an enterprise in which they are imposed, must be such regulations as are for the pro-

tection and safeguarding of employees or the public against accidental injuries or death (*Bowman Dairy Co.* v. *Industrial Com.* 292 Ill. 284; *Dietrich* v. *Industrial Board,* 286 Ill. 50,) and that they must be such laws or ordinances as are enacted or imposed with reference to the employment and not those which apply to all persons and have no reference to the enterprise or business of the employer. (*City of Rock Island* v. *Industrial Com.* 287 Ill. 76.) Section 3 of the Workmen's Compensation Act provides that the act shall apply automatically and without election to all employers engaged in any enterprise in which statutory or municipal ordinance regulations are imposed for the protection and safeguarding of the employees or the public therein. The regulations referred to are distinctly stated, in language too clear and plain to be misunderstood, to be regulations imposed upon the enterprise of the employer. An employer may conduct different and distinct businesses or enterprises, some of which automatically fall within the act and some of which do not. The fact that he is engaged in a business or enterprise which is within the act creates no liability as to injuries sustained by an employee in another and different business or enterprise conducted by him which is not within the act. Keeping these principles in mind, we approach the consideration of the regulations which defendant in error contends bring her employer within the Compensation Act. These regulations are three in number. They are contained in section 1 of an act entitled "An act to regulate the means of egress from public buildings" (Ill. Rev. Stat. 1943, chap. 111, par. 1;) in section 1 of an act entitled "An act relating to fire escapes" (Ill. Rev. Stat. 1943, chap. 55½, par. 1;) and in article IV of the 1941 ordinances of the city of Taylorville, entitled "Fire limits and buildings therein."

The above-mentioned act entitled "An act to regulate the means of egress from public buildings" was enacted in 1874, and section 1 of the act provides "that all public

buildings now in process of construction or hereafter to be built or constructed, which may or shall be used for churches, school houses, operas, theatres, lecture rooms, hotels, public meetings, town halls, or which may or shall be used for any purpose whereby a collection of people may be assembled together for religious worship, amusement or instruction, shall be so built and constructed that all doors leading from the main hall or place where said collection of people may be assembled, or from the principal room which may be used for any of the purposes aforesaid, shall be so swung upon their hinges and constructed that said doors shall open outward; and that all means of egress for the public from the main hall or principal room, and from the building, shall be by means of doors which shall open outwards from the main hall or building." Ill. Rev. Stat. 1943, chap. 111, par. 1.

The second statutory regulation relied on by defendant in error is the requirement contained in section 1 of the Fire Escape Act "that all public halls, which provide seating room above the first or ground story, shall be provided with such numbers of said ladder or stair or other approved fire escapes as the officers herein named may direct." Ill. Rev. Stat. 1943, chap. 55½, par. 1.

The Taylorville city ordinance introduced in evidence defines the fire limits of the city, prescribes regulations as to fireproof construction or repair of buildings therein, authorizes buildings of certain character to be declared nuisances, and makes it the duty of the city fire marshal to inspect all buildings or inclosures in process of erection, construction, alteration, repair or removal within the fire limits and enforce the provisions of the ordinance in relation thereto.

It was stipulated that the Christian county court house is located in the public square in the city of Taylorville; that its construction was begun in September, 1901, and completed in due course thereafter; that it is of stone and

masonry construction, with three full floors or stories above the ground level, a partial fourth floor or attic and a cupola in which a public clock is housed; that the county offices and court rooms for the circuit and county courts of the county are housed within the structure; that the circuit court room is located on the third floor above the ground level and contains seating room for approximately 275 persons; and that the county court room is located on the second floor above the ground level and has a seating capacity for approximately 70 persons. The sheriff of the county testified that the county and circuit court rooms were often used for political meetings, general meetings of farmers, the Farm Bureau, cemetery boards, employment meetings for the ordnance plants, meetings of the Industrial Commission, the miners' union, the Civil Air Patrol, for first-aid, and for bond drives, and Red Cross meetings. He further testified that none of these meetings were held except upon application to and with the consent of the sheriff, and that there was no group or organization that met there regularly or according to any schedule other than possibly the Industrial Commission.

Plaintiff in error contends that neither of the statutory regulations apply to the Christian county court house; that the requirement as to doors opening outward does not apply because the record does not affirmatively disclose that the court house is generally and primarily used for public meetings or meetings for religious worship, amusement or instruction; and that the statutory regulation as to fire escapes does not apply because the court house is not a "public hall" within the meaning of the statute.

Assuming for the present purpose, without here deciding the question, that the Christian county court house is subject to statutory regulation both as to means of egress and as to fire escapes, it is still essential to plaintiff in error's liability herein that these regulations must be imposed upon the particular enterprise in which it, as the

employer of defendant in error, is engaged, and not merely regulations imposed upon some other and different enterprise in which it, as an employer, is also engaged. The county of Christian is not exclusively engaged in the enterprise of furnishing care and treatment to its tubercular inhabitants. It is also engaged in other businesses and enterprises, among which is that of maintaining the courthouse building. This latter enterprise, if in fact actually extra-hazardous, either *per se* or because of the circumstances and conditions under which it is conducted, would automatically come within the provisions of the Workmen's Compensation Act, and the county would be compelled to provide and pay compensation for all accidental injuries sustained by its employees arising out of and in the course of their employment in any department of its extra-hazardous enterprise or business of maintaining said courthouse building. This liability of the county arising because of its extra-hazardous business of maintaining the courthouse building extends only to accidental injuries sustained by its employees while engaged in such business or while performing some act or service incidental thereto; and no liability whatever is created thereby as to injuries sustained by county employees while engaged in another and different business or enterprise of the county and in the performance of duties which have no connection with and are not incidental to the business or enterprise of maintaining the building. Defendant in error's duties as the tuberculosis nurse of Christian county had no connection with and were not incidental to the business of maintaining the courthouse, but were solely in connection with the enterprise of furnishing care and treatment to those inhabitants of the county afflicted with tuberculosis. If this enterprise of furnishing treatment for tuberculosis be considered as extra-hazardous and included within the present compulsory compensation law by virtue of statutory or municipal ordinance regulations imposed thereon, such reg-

ulations must be of the character designated and intended by subparagraph 8 of section 3 of the Compensation Act.

We come then to a consideration of the nature and character of the statutes and ordinance upon which defendant in error bases her contention that her employer is within the provisions of the Workmen's Compensation Act and her claim to compensation for accidental injuries sustained by her in the performance of admittedly non-hazardous duties. We have held that speed and traffic ordinances are not such regulations as are within the contemplation of subparagraph 8 of section 3 of the Workmen's Compensation Act. In *City of Rock Island* v. *Industrial Com.* 287 Ill. 76, a city employee while engaged in sweeping and cleaning the paved portion of the streets was struck and injured by a passing automobile. He claimed that his employment was extra-hazardous, under the provisions of subparagraphs 1 and 8 of section 3 of the Workmen's Compensation Act; that the maintaining and repairing of the public streets are the maintaining and repairing of a "structure" within the meaning of subparagraph 1; and that the employment of street sweeping was one in which speed and traffic regulations were imposed by ordinance for the protection of employees and the public within the meaning of subparagraph 8. We there sustained the action of the commission and the lower court in awarding compensation because the sweeping and cleaning of the streets was in fact extra-hazardous and was the maintaining and repairing of a "structure" within the meaning of subparagraph 1. However, had the employee relied solely upon the ordinance regulating speed and traffic, his claim for compensation could not have been sustained, as we there held that his employment was not, by virtue of such regulations, extra-hazardous under the provisions of subparagraph 8, for the reason that such regulations applied generally to and were designed for the protection of every person using the public thoroughfares of the city and had

no reference to the employment in which the injured street sweeper was engaged. The words "the employees" and "the public," as used in subparagraph 8 concerning enterprises in which statutory or municipal ordinance regulations are imposed "for the protection and safeguarding of the employees or the public therein," mean the employees engaged in the enterprise of the employer and the public in reference to or having some connection with the employment.

Section 1 of an act entitled "An act to regulate the means of egress from public buildings," (Ill. Rev. Stat. 1943, chap. 111, par. 1,) was enacted for the purpose of regulating, in public buildings, the means of egress for the public and persons assembled in such public buildings at public meetings or meetings for religious worship, amusement or instruction. The statute has no reference to any occupation, business or employment and was manifestly not imposed for the protection of any employees or for the public in connection with any employment. The same is true of the statute requiring fire escapes for all public halls which provide seating room above the first or ground story. (Ill. Rev. Stat. 1943, chap. 55½, par. 1.) This statute concerns only the protection of persons attending public meetings or meetings held in such public halls. Neither of these statutes was enacted for the protection of persons employed in the building or with reference to any business or enterprise being conducted therein. They are not regulations imposed upon the enterprise in which the county is engaged of furnishing care and treatment for persons afflicted with tuberculosis. They are regulations imposed upon the courthouse, not as a building wherein any occupation, business or enterprise is conducted or engaged in, but as a building wherein public meetings are held or where collections of people assemble together for religious worship, amusement, or instruction. They have no reference to the subject matter with which the Workmen's Compensation Act is concerned. The Taylorville

city ordinance likewise cannot be construed as imposing regulations upon any business or enterprise for the protection and safeguarding of the employees or the public, as contemplated by said subparagraph 8 of section 3 of the act. It is obvious that this ordinance was enacted to provide fire protection for property and not persons.

We are of the opinion that this record does not disclose that the enterprise in which defendant in error was employed, at the time she sustained the accidental injuries for which she is claiming compensation, was subject to statutory or municipal ordinance regulations within the meaning of subparagraph 8 of section 3 of the Workmen's Compensation Act, and therefore the award in this case must be set aside for want of jurisdiction in the commission to make it. In view of this conclusion, there is no necessity for a discussion of any other question raised by plaintiff in error herein.

The judgment is reversed and the cause is remanded, with directions to the circuit court to set aside the award of the Industrial Commission.

*Reversed and remanded, with directions.*

Mr. JUSTICE GUNN, dissenting:

I disagree with the conclusion reached by the majority in this case. The respondent was admittedly an employee of the county through its operation of the administration of a fund to give care and treatment to persons afflicted with turberculosis. There is no denial she was accidentally injured. The majority opinion reaches the conclusion the respondent is not entitled to compensation because she was not engaged in any enterprise declared to be extra-hazardous in section 3 of the Workmen's Compensation Act. Ill. Rev. Stat. 1945, chap. 48, par. 139.

There can be no question that the business of administering the affairs of the county involves some of the items specified in said section 3 as being extra-hazardous. I do

not deem it necessary to go into these matters specifically because of the plain provisions of the statute itself, which provides: "The provisions of this Act hereinafter following shall apply automatically and without election to the State, county, city, town, township, incorporated village or school district, body politic or municipal corporation, and to all employers and all their employees, engaged in any department of the following enterprises or businesses which are declared to be extra hazardous, * * *." Then are enumerated ten different specified hazardous occupations. It will be noted the act applies automatically to a county and to its employees. The respondent is an employee.

The Workmen's Compensation Act was amended many times and originally did not include municipal corporations, counties, and the like, and it was optional for the employer to come within the terms of the act. Later, employers engaged in extra-hazardous businesses were brought automatically within its terms, but it was not until 1919 that the State, counties, cities, towns, etc., were declared employers and brought within its terms. In 1921 section 3 of the act, which was substantially the same as it now is, except that it did not include counties and other municipal corporations, was held to have application to all employees in hazardous occupations regardless of the particular work they were doing when they were injured. The construction of this section came before us in *Illinois Publishing and Printing Co.* v. *Industrial Com.* 299 Ill. 189. In that case we first set out the contention of the employer as follows: "It is contended by plaintiff in error that the only employees covered by the act are those directly exposed to the hazards peculiar to the business or enterprise of the employer, and that it does not cover such employees as salesmen, bookkeepers and stenographers, who are not exposed to the special hazards. It is contended by defendant in error that if an industry is covered by the terms of a compulsory compensation law based upon a hazardous

classification it is covered as to all the employees therein, regardless of whether or not they are all actually exposed to the peculiar hazards of the business." After examining and analyzing prior cases and the statute we then said: "This compulsory Compensation act is general in its application and embraces all employers and their employees engaged in businesses or enterprises declared by the statute to be extra-hazardous. The language of the act is clear and is not open to construction. It means just what it says—the provisions of this act shall apply automatically and without election to all employers and their employees engaged in enterprises or businesses declared to be extra-hazardous—and the court has no right to read into the statute words that are not found therein, either by express inclusion or by fair implication."

The act of 1917 required all employers engaged in extra-hazardous businesses to come under the provisions of the act automatically, but did not then include counties, cities, towns, etc. In 1919 the State, county, cities, etc., were brought within the act, and it read exactly the same as it did in 1917, except for the addition, in the first paragraph, of the State, county, city, etc., so therefore the *Illinois Publishing and Printing Co. case* applies with equal effect because the other provisions of the act are exactly the same.

Moreover, the *Illinois Publishing and Printing Co. case* has been followed many times. In *McNaught v. Hines,* 300 Ill. 167, the contention was made that the Workmen's Compensation Act was not intended to include employees as within the act unless they were actually engaged in extra-hazardous employment at the time of the injury. We rejected this contention. In that case the injured employee was a salesman; the employer was a packing company. We said: "To sell through salesmen is as much a part of the business made extra-hazardous as a whole by

statute as to buy through purchasers, pack through packers, grind, store, load and deliver. It took all of these differ- ent parts of the work to make the sum total of the business in which the employer and his employees were all engaged, each doing his separate part in the usual course of the whole business. * * * *Illinois Publishing and Printing Co. v. Industrial Com.* 299 Ill. 189."

It will be noted in each of the above cases that the person injured was on the streets in the course of his employer's business, as was the respondent in this case. Again, in *Porter Co. v. Industrial Com.* 301 Ill. 76, we specifically followed the rule established in the *Illinois Publishing and Printing Co. case,* saying: "The first contention of plaintiff in error was considered by this court in *Illinois Publishing and Printing Co.* v. *Industrial Com.* 299 Ill. 189, and *McNaught* v. *Hines,* 300 Ill. 167, where it was held that since the amendment of the Compensation act of 1917 no distinction exists between an employee doing extra-hazardous work and one whose work is not extra-hazardous."

In *Marshall Field & Co.* v. *Industrial Com.* 305 Ill. 134, the employee slipped and fell upon the floor. The contention was made that her employment was that of a clerk and not extra-hazardous. In holding she was within the protection of the act we said: "It is claimed that neither the employer nor the employee was working under the provisions of the Workmen's Compensation Act, at the time of the accident. The employer used power-driven machinery, dynamos and elevators in operating its mercantile establishment, which were subject to statutory regulation as to their use and location. * * * The act therefore applied automatically to the employer by virtue of paragraph 8 of section 3, and the act applies to all employees in the various kinds of hazardous business included in that section, regardless of the kind of work in which

the employee is engaged. *Illinois Publishing and Printing Co.* v. *Industrial Com.* 299 Ill. 189."

In *Ascher Bros. Amusement Enterprises* v. *Industrial Com.* 311 Ill. 258, the employee was an usher in a moving-picture theater. In walking through the aisles he injured his leg which brought about a malignant tumor, and finally his death. In that case, after holding that the moving-picture-theater business was an extra-hazardous occupation under section 3 of the Workmen's Compensation act, we said: "Since it [employer] was engaged in a business declared extra-hazardous by the act, its employees engaged in the conduct of such extra-hazardous business, regardless of the character of their duties, were all brought within the terms of the act."

In *Figgins, Comr. of Highways,* v. *Industrial Com.* 379 Ill. 75, the employee was mowing weeds along the highway maintained by the commissioner of highways. He got off the machine, still holding the reins. While having a conversation with an individual who had just alighted from an automobile, he stepped over the sickle bar, and while in this position was severely injured. Compensation was awarded, but set aside by the circuit court. The contention was made that the injured employee was not performing any act or doing any work which was extra-hazardous, and therefore not entitled to compensation. The highway commissioner was engaged in work upon the road with tools or machines. This brought it within the provisions of section 3 of the Workmen's Compensation Act. (*Forest Preserve Dist.* v. *Industrial Com.* 357 Ill. 389.) In this case also we followed the *Illinois Publishing and Printing Co. case,* saying: "The specific work engaged in by the employee need not be a part of such extra-hazardous undertaking or bring him in contact with it." And accordingly the judgment of the circuit court in setting aside the award was reversed with directions to reinstate the award.

In the present case there can be no doubt that certain employees of the county are actually engaged in extra-hazardous work. The county maintains roads, buildings, furnaces, motor vehicles, and has numerous other activities of which we have judicial notice, some of which come within the extra-hazardous occupations specified in section 3 of the Workmen's Compensation Act. For instance, if persons are employed for the purpose of maintaining the courthouse they would come within subdivision 1 of section 3 of the Workmen's Compensation Act. (*Johnson* v. *Cohate,* 284 Ill. 214; *Rogalski* v. *Industrial Com.* 342 Ill. 37; *Jacobi* v. *Industrial Com.* 342 Ill. 210; *Sneeden* v. *Industrial Com.* 366 Ill. 552.) It was not necessary for the plaintiff's right to recover that she be engaged in one of such occupations. If other employees were so occupied it is sufficient, since conducting the county's business includes persons who carry on all of its activities. Carrying on the activity of caring for tubercular patients is a part of the occupation of the county. Clearly respondent was employed by the county, and the county in some respects was engaged in extra-hazardous business. It is specified in section 3 as being one of the class of employers liable to pay compensation, and I believe the distinction made in the opinion excusing it from liability is contrary to our prior decisions, and unusually harsh in its interpretation.

The judgment of the circuit court of Christian county should be affirmed.

JUSTICES WILSON and SMITH join in the foregoing dissenting opinion.