(No. 3991—

LILLA M. MILLER, WIDOW OF HENRY G. MILLER, DECEASED, FOR HERSELF AND AS NEXT FRIEND AND MOTHER OF CAROLYN JANE MILLER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 25, 1947.*

GIFFIN, WINNING, LINDNER, NEWKIRK AND JONES, for claimant.

GEORGE F. BARRETT, Attorney General and C. ARTHUR NEBEL, Assistant Attorney General, for respondent.

ECKERT, C. J.

This suit is brought by Lilla M. Miller, the widow of Henry G. Miller, in her own behalf, and on behalf of her minor daughter, Carolyn Jane Miller, against the State of Illinois, under Section 7a of the Workmen's Compensation Act.

The decedent, Henry G. Miller, was employed by the respondent at the time of his death, and had been so employed for several years prior thereto, in the Department of Revenue, as supervisor of the Rules and Regulations Division of the department. Mr. Miller's employment occasionally required him to travel, and to be away from his main office, which was in the Illinois Building, at Springfield, Illinois.

Mr. Miller supervised the rules and regulations made under the various tax acts of the State of Illinois administered by the Department of Revenue. From June 3rd to June 6th, 1946, the National Tax Association held its annual convention in the City of Chicago, Illinois. Mr. Miller went to Chicago on June 2, 1946, at the direction of his superior, for the purpose of attending this convention, and conferring with the director of his department and other officers. On June 4th Mr. Miller attended the meeting of the National Tax Association, and was in conference with his director and other members of the Department of Revenue. With the knowledge and ap-

proval of the department, he was staying at the LaSalle Hotel. On June 5th he was again to attend meetings of the National Tax Association, and have further official conferences. Early in the morning of June 5th, a disastrous fire occurred at the LaSalle Hotel, in which Mr. Miller lost his life. He left the claimant, Lilla H. Miller, his widow surviving, and one child, Carolyn Jane Miller, age eleven years.

The Director of Revenue had immediate notice of Mr. Miller's death, and demand for compensation was made by the claimant within six months thereafter.

There is no dispute as to the facts. The respondent, however, raises two questions of law:

1. Is the injury to or death of an employee of the State of Illinois, traveling as required by his employment, compensable under the Workmen's Compensation Act if the injury is sustained in a fire occurring while the employee is in his place of lodging and not during his ordinary working hours, and

2. Is the injury to or death of an employee of the Department of Revenue, arising out of and in the course of the employment, not in itself an extra-hazardous undertaking, compensable under the terms of the Workmen's Compensation Act.

The respondent has filed a very able and exhaustive brief, from which it appears that the compensability of an employee, injured by a fire in the nighttime, while in his place of lodging, and while traveling as required by his employment, is a question of first impression in the State of Illinois. Although there are numerous Illinois cases in which employees, required to travel, have been held entitled to compensation for injuries arising out of and in the course of the employment, *(Illinois Publishing Company* v. *Industrial Commission,* 299 Ill. 189; *Solar-Sturges Manf. Co.* v. *Industrial Commission,* 315 Ill. 352; *Porter* v. *Industrial Commission,* 352 Ill. 392; *City of Chicago* v. *Industrial Commission,* 389 Ill. 592), none is concerned with an injury or death occurring in a hotel, in

the nighttime, when the employee was no longer literally at work.

In other jurisdictions, however, many courts have held that such an employee is entitled to compensation. in *Souza's Case,* (316 Mass. 332, 55 NE (2nd) (611), it was held that an employee's death, in a fire, occurring while he was asleep in a rooming house, arose out of and in the course of his employment. The court there pointed out that the question was whether the employment brought the employee in contact with the risk that in fact caused his death. And the court refused to differentiate between cases in which the employee selected the place of lodging, from cases in which the selection was made by the employer. On page 613, the court said:

"But it seems to us that the connection between the employment and the risk is substantially the same whether the employer or the employee selects the particular place, as long as lodging away from the employee's home or regular place of abode is provided by the employer as an incident of the work, and is required by the terms of the employment, and as long as the employee selects a place that fulfills the requirements of the employment and that is otherwise proper in the sense that it involves no unnecessary risk."

In the case of *Thiede* vs. *Searle & Co.,* 278 Mich. 108, 270 NW 234, an employee, injured by fire in the place of his lodging, was held entitled to compensation, and the court based its decision on the analogous case of an employee injured while using a public conveyance. The Supreme Court of Michigan said:

"Counsel for both parties cite us many cases of other courts, relating to similar accidental injuries, with their respective *pro* and *con* decisions. But we do not find it necessary to seek further than our own decisions for controlling precedent. We think our holding in *Widman* v. *Murray Corp. of America,* 245 Mich. 332, 222 NW 711, 712 by analogy, applies with equal force to the case at bar. There the plaintiff had been sent by his employer on a business trip, and while sitting on the observation platform of a passenger train, was hit in the eye by a cinder. The defendant there claimed that the injury did not arise out of the employment. We said:

" 'It was a condition of his employment that he (plaintiff) should be on this train, which turned out to be a place of danger. The risks to which he was exposed from riding on trains from place to place as he was directed were incidental to his employment. He was required to ride on trains in the performance of his master's business. This condition of the employment was the proximate cause of his injury. These undisputed facts fix the responsibility of the defendant.'

"In the instant case, it was a condition of decedent's employment that he should stay at the hotel, which turned out to be a place of danger. The risks to which he was exposed in staying at hotels as required by his position were incidental to his employment. He was required to stay at a hotel in Lansing in the performance of his master's business. This condition of the employment was the proximate cause of his injury. These undisputed facts fix the responsibility of the defendants   *   *   *."

In the case of *Texas Emp. Ins. Ass'n* vs. *Harbuck,* 73 SW (2d) 113, the Court of Civil Appeals of Texas held squarely that fatal injuries to a traveling salesman, sustained when he attempted to escape from a burning hotel at which he was staying for the night, arose out of and in the course of his employment even though he was not at the time actually engaged in the pursuit of his employer's business. The court pointed out that at the time of the injury the employee was doing the very thing which in the performance of his duties, he should have done, and was expected by his employer to do, occupying a place of rest, his room in the hotel. The employee's stopping at a hotel was a necessary element in the performance of his duty. See also *Stansberry* vs. *Monitor Stove Co.,* 150 Minn. 1, 183 NW 977, and *Harinel* vs. *Hall-Thompson Co.,* 98 Conn. 753, 120 A. 603.

This court is of the opinion that employees, required to travel by their employment, are entitled to the benefits of the Workmen's Compensation Act for injuries resulting from a fire in their place of lodging, (unless the employee is injured while doing some act outside the scope of the provisions of the Act), and that the rule, as established by these various decisions, is within the meaning

and intent of the Workmen's Compensation Act of this State. As was pointed out by the Supreme Court of Illinois in *Porter* vs. *Industrial Commission,* supra, the controlling factor in determining whether an accidental injury arose out of and in the course of the employment is whether the employee was in the sphere of his duty when the accident occurred. If an injury occurs within the period of the employment, at a place where the employee might reasonably be, and while he was reasonably fulfilling the duties of his employment, *or engaged in doing something incidental to it,* he is entitled to compensation.

Rest is certainly incidental to an employment that takes an employee away from home overnight. Here, as in the Porter case, the employee had gone to another city in the service of his employer; he had performed the duties assigned to him. The injury occurred, in the Porter case, while the employee was riding on an interurban train, a proper means of transportation. The injury occurred in this case while the employee was seeking necessary rest in a suitable and proper place. The lurching of the car in the Porter case was held to be one of the risks incidental to the employment. The burning of the La Salle Hotel was a like risk in this case.

As the court said in the Thiede case, supra, it was a condition of decedent's employment that he should stay at a hotel; he was required to stay at a hotel in Chicago in the performance of the respondent's business. The condition of his employment was the proximate cause of his death. The court therefore finds that the death of Henry G. Miller, arose out of and in the course of his employment.

Whether the injury to or death of an employee of the Department of Revenue, arising out of and in the course of his employment, not in itself an extra-hazard-

ous undertaking, is compensable under the terms of the Workmen's Compensation Act, necessitates a consideration of a case recently decided by the Supreme Court of Illinois: *County of Christian* vs. *Industrial Commission*, 391 Ill. 475. The respondent contends that the court in that case held that a county employee was not within the provisions of the Workmen's Compensation Act, and not entitled to its benefits, where the county had not elected to come under the act, and where the employee was not herself engaged in an extra-hazardous business or enterprise; that therefore an employee of the State, not himself engaged in an extra-hazardous enterprise, is not within the Act.

An analysis of the opinion filed in the case, however, indicates that it is not so far reaching. Christian county had not elected to come within the provisions of the Workmen's Compensation Act, and the court, at page 477, points out that liability of the county, if any, under the act, must arise by reason of the automatic application of the statutory provisions, and that the claimant relied upon the provisions of sub paragraph 8 of Section 3 to bring the case within the act. Under this sub-paragraph, an employer automatically comes within the act if his enterprise is one on which statutory or municipal ordinance regulations are imposed for the regulating, guarding, use or placing of machinery or appliances, or for the protection and safeguarding of the employees or the public therein. From the opinion, it is obvious that claimant based her entire case upon the theory that the County of Christian came within the provisions of the Workmen's Compensation Act because the court house in which she maintained her office was subject to statutory and municipal ordinance regulations.

The statutory and municipal ordinance regulations

upon which the claimant relied, however, were not such regulations as were for the protection and safeguarding of employees or the public against accidental injuries or death; they were not regulations imposed upon the enterprise of the employer. The actual holding of the court is found in the next to the last paragraph of the opinion, (p. 486);

"We are of the opinion that this record does not disclose that the enterprise in which defendant in error was employed, at the time she sustained the accidental injuries for which she is claiming compensation, was subject to statutory or municipal ordinance regulations within the meaning of sub-paragraph 8 of section 3 of the Workmen's Compensation Act, and therefore the award in this case must set aside for want of jurisdiction in the commission to make it."

In other words, the case was presented to the court, by the claimant, on the theory that the county came within the Act because of certain statutory or municipal ordinance regulations, and the court found specifically that these statutory or municipal ordinance regulations were not such regulations as were contemplated by the Act. The case was not presented to the court, nor decided by the court, on any other theory. The court did not decide whether, under the provisions of Section 3 of the Workmen's Compensation Act, the county, as a governmental unit, is, or is not, automatically subjected to the provisions of the Act; the court did not decide whether, under the provisions of the Workmen's Compensation Act, the county, as an employer engaged in extra-hazardous enterprises, is, or is not, automatically subjected to the provisions of the Act. It is true that there is dictum in the opinion indicating that the act does not apply to a county unless the county is an employer engaged in an extra-hazardous enterprise, and unless the employee in question is engaged in such an extra-hazardous enterprise. The actual decision in a case, and dicta included in

an opinion, are separate and distinct. A decision is controlling and should be followed. Dicta may and should be disregarded. In the history of English and American law, the easy quotation of dicta, rather than the analysis of a decision, has only served to confuse and not clarify precedents.

Furthermore, a long line of decisions by the Illinois Supreme Court, prior to the Christian County case, held the act applicable to employees regardless of the character of the work being performed. In the case of *Illinois Publishing Company* vs. *Industrial Commission,* supra, an advertising solicitor for a publishing company was killed in an automobile accident while calling on prospects for the company. The company operated printing presses and other machinery regulated by municipal ordinances, admittingly an extra-hazardous activity. The court there held that since the company was engaged in an extra-hazardous enterprise, the act applied to an employee of the company regardless of whether or not he was employed in the department of the company which was extra-hazardous. The court stated, at page 488:

"This compulsory compensation Act is general in its application and embraces all employers and their employees engaged in businesses or enterprises declared by the statute to be extra-hazardous. The language of the Act is clear and is not open to construction. It means just what it says—the provisions of this Act shall apply automatically and without election to all employers and their employees engaged in enterprises or businesses declared to be extra-hazardous—and the court has no right to read into the statute words that are not found therein, either by express inclusion or by fair implication."

In the case of *McNaught* vs. *Hines,* 300 Ill. 167, the court rejected the contention that the Workmen's Compensation Act was not intended to include employees as within the Act unless they were actually engaged in extra-hazardous employment at the time of the injury. In *Porter* vs. *Industrial Commission,* supra, it was held

that no distinction existed between an employee doing extra-hazardous work and one whose work is not extra-hazardous. In the case of *Marshall Field and Co.* vs. *Industrial Commission,* 305 Ill. 134, it was admitted that the employer used power-driven machinery, dynamos, and elevators in operating its mercantile establishment which were subject to statutory regulation as to their use and location. The court stated:

"The act therefore applied automatically to the employer by virtue of paragraph 8 of Section 3, and the act applies to all employees in the various kinds of hazardous business included in that section, regardless of the kind of work in which the employee is engaged."

To the same effect is the case of *Ascher Brothers Amusement Enterprises* vs. *Industrial Commission,* 311 Ill. 258, and *Figgins, Commissioner of Highway,* vs. *Industrial Commission,* 379 Ill. 75.

In view of this long line of decisions, in which the Supreme Court refused to distinguish between employees engaged in extra-hazardous enterprises, and employees not so engaged, the decision in the Christian County case certainly should be confined to its specific holding. Dictum in that opinion, or in any opinion, cannot over rule previous decisions of the same court. This court believes that the Christian County case is properly limited to the holding that the regulations relied upon by the claimant were not such as were contemplated by sub-section 8 of Section 3. Had the claimant relied, either upon the theory that the Act applied automatically to the county as a governmental unit, or applied automatically to the county because it was engaged, as any other employer, in an enterprise or business declared to be extra-hazardous, a contrary result might well have been reached.

Section 3 of the Illinois Workmen's Compensation Act provides that the Act should apply automatically

and without election to the State, county, city, town, township, incorporated village or school district, body politic or municipal corporation, and to all employers and all their employees, engaged in any department of the businesses or enterprises therein declared to be extra-hazardous. This court has interpreted that section to mean that the act applies automatically and without election to the state, on the theory that there are two classes of employers: the act applies automatically to the one class, governmental units, and applies automatically and without election to all other employers and employees, a second class, when engaged in businesses declared to be extra-hazardous. This interpretation is in accord with legislative history. The automatic provisions of the Act were added by amendment in 1917, but at that time contained no reference to the State or other governmental units, providing only that the Act should apply automatically to all employers and their employees engaged in any of the enterprises or businesses declared to be extra-hazardous. The State and other governmental units were specifically named in Section 4 of the Act as employers, and employees of these governmental units were named in Section 5 of the Act as employees. By the amendment of 1919, the governmental units were added to Section 3. The only purpose of this addition would have been to create two classes, for the Act already applied to these governmental units and their employees as it applied to any other employer; the only purpose could have been to create a class of governmental units to which the Workmen's Compensation Act applied automatically, regardless of the character of work carried on by the employees. Any other interpretation makes the amendment of 1919 to Section 3 of no effect.

The court, therefore, is still of the opinion that the

provisions of the Illinois Workmen's Compensation Act apply automatically and without election to the State as a governmental unit, and that the provisions of the Act are applicable to state employees, regardless of whether or not they are engaged in an extra-hazardous enterprise or business. Henry G. Miller, as an employee of the Department of Revenue, comes within, and was entitled to the benefits of that Act. Claimant is entitled to an award on account of the death of Henry G. Miller, whose death arose out of and in the course of his employment by the respondent.

Mr. Miller's earnings during the year immediately preceding his death were in excess of $6,200.00, so that claimant is entitled to award in the sum of $4,450.00. Since the death occurred subsequent to July 1, 1945, this must be increased 20%, making a total award of $5,340.00. The weekly compensation rate is the maximum of $15.00, increased 20%, or $18.00 per week.

Award is therefore entered in favor of the claimant, Lilla M. Miller, in the amount of $5,340.00 to be paid to her as follows:

$ 756.00, accrued, is payable forthwith;
$4,584.00, is payable in weekly installments of $18.00 beginning on the 25th day of March, 1947, for a period of 254 weeks, with an additional final payment of $12.00.

All future payments being subject to the terms and conditions of the Workmen's Compensation Act of Illinois, jurisdiction of this cause is specifically reserved for the entry of such further orders as may from time to time be necessary.

This award is subject to the approval of the Governor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."