(No. 13092.—Judgment reversed.)

THE BOWMAN DAIRY COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(MARGARET PELKMANN, Admx. Defendant in Error.)

*Opinion filed February 18, 1920—Rehearing denied April 9, 1920.*

1. WORKMEN'S COMPENSATION—*what must be shown where employer has not elected to come under act.* Where the employer has not elected to come under the Compensation act of 1915, to sustain the jurisdiction of the Industrial Commission it is necessary to show not only that the employer is engaged in an extra-hazardous business as defined in the act, but also that the injury to the employee arose out of and in the course of the employment in such extra-hazardous occupation.

2. SAME—*what determines whether regulation by an ordinance renders a business extra-hazardous.* The test to be applied in determining whether or not a municipal ordinance renders a business extra-hazardous, as provided by paragraph 8 of section 3 of the Compensation act of 1915, is whether the ordinance is for the protecting and safeguarding of the employees or the public against accidental injuries or death.

3. SAME—*an ordinance regulating passageways in livery barns does not render the dairy business extra-hazardous.* An ordinance regulating the width of stalls and passageways in all private, livery, sale or boarding stables is not such a municipal regulation contemplated by paragraph 8 of section 3 of the Compensation act as will render the business of distributing milk an extra-hazardous occupation merely because the employer maintains a stable for horses at the distributing station.

4. SAME—*when driver of milk wagon is not engaged in extra-hazardous occupation.* The driver of a milk wagon is not engaged in an extra-hazardous occupation, as defined in section 3 of the Compensation act, where his duties do not connect him with any extra-hazardous feature of the business in which his employer may be engaged.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

MONTGOMERY, HART & SMITH, for plaintiff in error.

BOWE & BOWE, for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

Carl W. Pelkmann, deceased, was a milk wagon driver employed by the Bowman Dairy Company at its sub-station in Evanston, Illinois. On February 5, 1917, while driving his horse along one of the streets of Wilmette, Illinois, in the course of his employment of delivering milk, his milk wagon was struck by an automobile and tipped over and he was killed. He was survived by his widow, Margaret, and his two minor children, one of which since the institution of these proceedings has died. In June, 1917, the widow filed her petition before the Industrial Commission asking that compensation be awarded her and her children on account of the death of Pelkmann. On the 3d of August, after notice to the plaintiff in error, the arbitrator before whom hearing was had made a finding to the effect that the commission was without jurisdiction, and recited in that finding that the case was dismissed without prejudice. It appears that no petition for review by the Industrial Commission was filed or writ of *certiorari* sued out of the circuit court of Cook county. On January 30, 1918, the applicant having been appointed administratrix of the estate of Carl W. Pelkmann, filed before the Industrial Commission another petition asking that compensation be awarded on account of the death of Pelkmann. Said petition shows that in the meantime the younger of the two children had

died.   Plaintiff in error appeared in response to notice and contended before the arbitrator, and later before the Industrial Commission, that the former hearing and finding of the arbitrator, which later by operation of law became the finding of the commission, were *res judicata;* and further, that the plaintiff in error was not conducting an extra-hazardous business as defined in section 3 of the Compensation act and had not elected to come under the act.   The arbitrator, and later the commission, found against these contentions and awarded the sum of $11.50 per week for a period of 304 weeks and in addition $4 for one week. The finding of the Industrial Commission was confirmed by the circuit court of Cook county, and a writ of error is sued out here to review such finding.

It is not disputed that plaintiff in error had not elected to come under the Workmen's Compensation act, and it is contended here by plaintiff in error that it is not under the act within the meaning of section 3 of the act, defining hazardous occupations, businesses or enterprises.   It appears from the evidence that the plaintiff in error is a company engaged in the distribution of milk and other dairy products in the city of Chicago and its suburbs.   It maintains on Ridge avenue, in Evanston, a distributing station.   This station is a two-story building, the first floor of which is occupied by a wagon wash-room and refrigerating milk-room.   The branch offices of the company were on the second floor and the horses owned by it and used at that station were kept in a stable on the second floor.   It appears that the duties of Pelkmann consisted in harnessing and hitching a horse to his milk wagon and driving to a car standing upon a side-track, in which the milk and cream were shipped to the station from bottling plants.   He would secure his load of milk and cream from the employees in the car, who would hand the same to him, and upon loading his wagon he would drive to the homes of his customers and distribute the product.   There was in the wash-room

a vat in which hot water was sometimes kept, also a turbine brush for the purpose of cleaning bottles, which was connected up with a steam pipe and was operated by steam furnished from a boiler of about two horse-power. There was no other machinery of any sort or description at the station nor any storage of goods other than the surplus goods from day to day put in the milk-room. The evidence shows that Pelkmann had nothing to do with the operation of the turbine brush; that the vat at times contained boiling water; that the only occasion that Pelkmann had to go into the room where the vat and brush were situated was to fill his lantern with kerosene from a tank placed in the wash-room. The turbine brush was not in use at all times, the evidence showing that at times it would not be used for a month and when in use was operated by one man.

In order to sustain the jurisdiction of the Industrial Commission it is necessary to show not only that plaintiff in error was engaged in an extra-hazardous business but that deceased was also engaged in an extra-hazardous occupation, and that he lost his life by an injury arising out of and in the course of employment in such extra-hazardous occupation. (*Marshall* v. *City of Pekin,* 276 Ill. 187.) What business or occupation comes within the classification of extra-hazardous has been and is to be determined by the legislature, and when that has been determined courts have no right to make a different classification or inject into the act any classification not fairly within its intent but are bound by the act of the legislature. It is well settled in this State that while some part or department of the business of an employer may be extra-hazardous under the statute, still if the employee's duties were not connected with or incident to the extra-hazardous part of the business of the employer he is not within the provisions of the Compensation act. (*Seggebruch* v. *Industrial Com.* 288 Ill. 163; *Brennan* v. *Industrial Com.* 289 id. 49.) As was said in the *Seggebruch case:* "It was not the purpose to extend

the provisions of the act to occupations not having any connection with the extra-hazardous occupations mentioned in section 3." In *Sanitary District of Chicago* v. *Industrial Board,* 282 Ill. 182, it was held that the Compensation act refers to the business and not to the person of the employer, and does not extend to separate lines of business having no connection whatever with extra-hazardous occupations. To the same effect are *Vaughan's Seed Store* v. *Simonini,* 275 Ill. 477, and *Fruit* v. *Industrial Board,* 284 id. 154. It is likewise the rule in this State that under the Compensation law of 1915 delivery of the employer's goods to his customers does not constitute "carriage by land or water," as provided in section 3 of the act. (*Fruit* v. *Industrial Board, supra.*) If the occupation of the plaintiff in error in this case was extra-hazardous within the contemplation of section 3 of the Compensation act it must arise from some feature of the business other than that in which the deceased was engaged at the time of the accident, and in order to bring the deceased under the act his employment must be so connected with such extra-hazardous occupation of the employer as to expose him to the dangers arising out of such hazardous employment. (*Vaughan's Seed Store* v. *Simonini, supra.*) The deceased had nothing whatever to do with the operation of the plant of the plaintiff in error beyond receiving his quota of milk from the railway car on the side-track, delivering the same to his customers and collecting therefor. He had nothing whatever to do with the machinery for washing the bottles or the operation of the turbine brush, which is the only machinery on the premises. The only occasion which he had to go into the room where the washing vat and brush were situated was to take kerosene from a tank in the corner of the room for the purpose of filling his lantern. There is no evidence that he had occasion to pass near this brush or had anything to do with it or that it was ever in operation while he was in the room.

Defendant in error contends that the business of the plaintiff in error is extra-hazardous within paragraph 8 of section 3 of the act, which provides: "In any enterprise in which statutory or municipal ordinance regulations are now or shall hereafter be imposed for the regulating, guarding, use or the placing of machinery or appliances, or for the protection and safeguarding of the employees or the public therein; each of which occupations, enterprises or businesses are hereby declared to be extra-hazardous." She also contends that since there is a certain ordinance of the city of Evanston regulating the width of stalls in stables in which horses are kept and the width of passageways and footways between the stalls, such ordinance was for the protection and safeguarding of employees and the public therein, and that as such ordinance applies to the stable kept by plaintiff in error, therefore the business of plaintiff in error is extra-hazardous.

The effect of village or city ordinances as determining whether or not an employer is under the Compensation act was before this court in *Dietrich* v. *Industrial Board*, 286 Ill. 50, where it was held that the purpose of the Compensation act is to give compensation for accidental injuries or death and that its language must be construed with reference to that purpose. This court there said: "When it is said that it shall apply in any enterprise in which statutory or municipal ordinance regulations are imposed for the protection and safeguarding of the employee or the public therein, it refers to such regulations for the protecting and safeguarding of employees or the public against accidental injuries or death." This is the test to be applied in determining whether or not a municipal ordinance brings the business of the employer within the classification of hazardous occupations.

In *Hahnemann Hospital* v. *Industrial Board*, 282 Ill. 316, where an employee of a hospital whose duties required him to go to all parts of the building and supervise and

292 — 19

assist in caring for the machinery, elevators, etc., in the hospital, which was a seven-story building, it was held that since an ordinance of the city of Chicago required elevators and fire-escapes in buildings more than two stories in height, such ordinance brought the hospital within paragraph 8 of section 3 of the Compensation act, the court there saying: "The statute does not undertake to specifically define or specifically describe every business, occupation or enterprise that it classifies as extra-hazardous, but it is clear that no business should be held to be extra-hazardous unless it is, in fact, extra-hazardous *per se* or is rendered extra-hazardous when conducted under the conditions and surroundings named in the statute."

The ordinance introduced regulates the width of stalls and passageways in all private, livery, sale or boarding stables. This ordinance shows on its face, therefore, that it is a building regulation for any and all horse stables to be erected in Evanston. Applying these rules, we are of the opinion that the ordinance regulating the size of stalls or the size of passageways between such stalls in any barn in the city of Evanston is not such as was contemplated by the legislature as imposed "for the protection and safeguarding of the employees or the public therein," so as to bring the owner thereof within the classification of an extra-hazardous occupation. If such were the effect of the ordinance, then by reason of the provision therein that it shall apply to "stalls in private, livery, sale or boarding stables," anyone owning a stable for horses in the city of Evanston would be brought under the Compensation act without the right of election, even though he be engaged in no business whatever but had built a barn for his family driving team. Such a construction would lead to absurd consequences. As was said in *Uphoff* v. *Industrial Board,* 271 Ill. 312: "The courts are bound to presume that absurd consequences leading to great injustice were not contemplated by the legislature, and a construction should be adopted that it may

be reasonable to presume was contemplated." The Compensation act by section 1 gave the right of election to employers who were not engaged in a business, occupation or enterprise declared by the act to be extra-hazardous. It provided by section 3 that certain employers engaged in occupations which section 3 defines as hazardous are under the act without right on their part to elect to come under it. Such occupation must be either hazardous *per se* or made so by surrounding circumstances. Surely it cannot be said that one who owns for his private use a stable in which to keep his horses will be denied the right to elect whether or not he shall come under the act, because of an ordinance requiring that stalls and passageways be of certain width, yet to adopt the contention of defendant in error in this case is to bring about just that result.

We are of the opinion, therefore, that the ordinance offered in evidence did not have the effect of making the occupation of plaintiff in error extra-hazardous. There is no evidence in the record from which it may be reasonably concluded that Pelkmann's duties brought him into any place about the building where an extra-hazardous business or occupation was being conducted or that he was ever at any time subjected to dangers arising out of such an occupation as is classified by section 3 of the act as extra-hazardous. This being true, the Industrial Commission was without jurisdiction to pass upon the petition of defendant in error.

Under this view of the case it is not necessary to pass upon the contention of plaintiff in error that the first hearing before the arbitrator was *res judicata.*

For the reasons herein expressed the circuit court erred in quashing the writ of *certiorari.* The judgment of the circuit court is therefore reversed and the finding of the Industrial Commission is set aside.   *Judgment reversed.*